IN THE INTEREST OF "S" CHILDREN: S.L.S. and S.F.S.
No. 28565
Intermediate Court of Appeals of Hawaii.
September 22, 2008.
On the briefs:
Tae W. Kim, for Father-Appellant.
Joseph Dubiel, for Mother-Appellant.
Mary Ann Magnier, Daisy B. Hartsfield, Deputy Attorneys General, for Appellee Department of Human Services.

SUMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA and FUJISE, JJ.
Appellants Father and Mother appeal from the Amended Order Awarding Permanent Custody (Amended Custody Order) filed on June 4, 2007 and the "Order Granting Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan Filed May 7, 2002" (Order Granting Permanent Custody Motion) filed on May 21, 2007 in the Family Court of the First Circuit (family court).[1]
In the Amended Custody Order, the family court made findings and orders terminating Mother and Father's parental rights to their two children (hereinafter referred to individually as Child I and Child II and collectively as the children), awarding permanent custody of the children to the Department of Human Services (DHS), and ordering the April 12, 2007 Permanent Plan (Permanent Plan). In the Order Granting Permanent Custody Motion, the family court made findings, by clear and convincing evidence, pursuant to Hawaii Revised Statutes (HRS) § 587-73(a) (2006 Repl.) and additional orders, relating to the award of permanent custody to DHS, including ordering the Permanent Plan.[2]
On appeal, Father argues that based on erroneous Findings of Fact (FOFs) 134 through 139, 141, 152 through 156, 158, and 160 and wrong Conclusions of Law (COLs) 12 through 15 in the family court's July 12, 2007 Findings of Fact and Conclusions
Law (FOF/COL), the family court abused its discretion in issuing the Amended Custody Order and the Order Granting Permanent Custody Motion. Father also maintains that FOFs 7, 29, 36, 39, 47, 50, 51, 52, 133, and 157 are erroneous.
Father requests that we vacate the Amended Custody Order and Order Granting Permanent Custody Motion and remand this case to the family court, instructing the court to provide Father with adequate legal representation, allow his counsel access to the case files and related FC-G guardianship files, provide assistance and services to Father necessary for the safe return of the children to the family home, allow Father a reasonable amount of time to demonstrate that he is able to provide a safe home for his children with the assistance of a service plan, and thoroughly evaluate and rule on the placement of the children before approving any permanent plan.
On appeal, Mother generally contests every FOF and COL "that goes against or disagrees that she should be allowed to have her rights to her children or that she can provide a safe home in a reasonable time." Specifically, she argues that the family court erred and abused its discretion by
(1) issuing its Amended Custody Order and Letters of Permanent Custody;
(2) issuing its FOF/COL, specifically FOFs 52, 114, 116, 117, 153, and 154 and COLs 12 and 13;
(3) finding and concluding that Mother was not and would not become willing and able to provide a safe family home for the children, even with the assistance of a service plan, thin a reasonable amount of time; and
(4) failing to give Mother enough time from the court hearing on March 8, 2006, where Father stipulated to jurisdiction and foster custody, to the filing of DHS's Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan (Permanent Custody Motion) on May 7, 2007 to reunify with the children.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Father's points of error as follows:
(1) The family court did not abuse its discretion in granting the Amended Custody Order and the Order Granting Permanent Custody Motion.
(a) The family court did not deny Father his right to effective assistance of counsel
(i) by denying Father's request for a court-appointed counsel to replace Thomas Haia (Haia), the "consulting counsel" already assigned to him, because at a hearing on Father's "Motion in Opposition for Adoption of [the Children] Hearing 5/16/07," Father told the family court that he wanted Haia to continue representing him;
(ii) because there is no evidence in the record on appeal that Haia would not have been unable to submit Father's "Motion in Opposition for Adoption of [the Children] Hearing 5/16/07" to the family court had Father given it to him or that Haia was unable to file any other pleadings on behalf of Father;
(iii) because the State of Hawai`i's alleged failure to provide Haia with the exhibits in a timely manner, through no fault of Haia, does not, per se, support an ineffective assistance of counsel claim against Haia (although Haia complained about the last production of exhibits, he did not argue that he was unable to be adequately prepared for the hearing as a result);
(iv) because although Father maintains that he had "no communication either before or after the day of the hearing with [Haia]," Father does not specify which hearing that was or how the alleged lack of communication prejudiced him, so we decline to address this point. See Hawaii Rules of Appellate Procedure (HRAP)) Rule 28(b)(7) ("Points not argued may be deemed waived.); and
(v) assuming arguendo the family court was required to afford Father a reasonable opportunity to show good cause for his ineffective assistance of counsel claim, Father has failed to show how the opportunity was not reasonable because Father was asked by the court if he wanted Haia to continue and Father said yes.
The family court's FOFs 29 and 39 were not erroneous.
(b) The family court did not abuse its discretion in denying Father's request to review the case file and related guardianship files in this case because Father's opposition to the guardian's guardianship of the children was a collateral matter that had no bearing on whether Father was or would be willing and able to provide the children with a safe family home, even with the assistance of a service plan, within a reasonable amount of time or that the Permanent Plan was in the children's best interests. Hawaii Rules of Evidence Rule 401; HRS § 587-73(a).
(c) Given that Father does not explain how he was prejudiced by the court's denial of his oral motions to continue, we fail to see how the court abused its discretion by denying said motions. See Hawaii Rules of Civil Procedure Rule 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.").
(d) DHS gave Father a "reasonable amount of time" to show that he was willing and able to provide the children with a safe family home, with the assistance of a service plan. See HRS § 587-73 (a) (2); In re Doe, 89 Hawai'i 477, 492, 974 P.2d 1067, 1082 (App. 1999).
(e) There is no evidence in the record on appeal that the family court and DHS believed that as a consequence of Father's incarceration, Father had given up his parental rights. The family court clearly states in FOF 138 that its finding in FOFs 137 and 138 that Father was not willing and able to provide the children a safe family home, even with the assistance of a service plan, and would not be able to do so within the reasonably foreseeable future was not solely based on Father's incarceration. Although Father maintains that FOF 138 is erroneous, he does not provide any convincing evidence that FOFs 136 and 137 were solely based on Father's incarceration.
(f) Father was given a reasonable opportunity to demonstrate that he was willing and able to provide a safe home for the children, with the assistance of a service plan, pursuant to HRS § 587-73(a)(2). Hence, FOFs 134 though 139 and 141 are not clearly erroneous and COLs 12 and 13 are not wrong.
(i) DHS provided Father with sufficient services and, hence, FOFs 152 though 156 and 158 are not clearly erroneous. DHS designed for the family various Family Service Plans (service plans), which extended through 2007, with the goal of eventually maintaining the children "in a safe family home without DHS intervention." Evidence in the record on appeal shows that Father said at a review hearing that he would no longer be participating in DHS services and he would be returning to prison to serve out his remaining period of incarceration; Father had last been in contact with DHS in the earlier part of 2006; Father had not complied with portions of his service plans; Father had not been receptive to DHS's offer of additional services to him; and Father had voiced resistance to participating in DHS services.
(ii) In its COL 11, which Father does not dispute, the family court found that "DHS is under no obligation to provide services to an incarcerated parent, when the services are not available to the incarcerated parent in the prison system. In re Doe, 100 [Hawai`i 335, 345, 60 P.3d 285, 295 (2002)].
(iii) There was clear and convincing evidence in the record on appeal that Father was unwilling and unable to provide the children with a safe home with the assistance of a service plan, even though there was no evidence Father had ever harmed or threatened the children and there was evidence that Father completed parenting classes and a drug treatment program. The family court fully considered "all relevant prior and current information pertaining to the safe family home guidelines," pursuant to HRS § 587-73 (a) (1), in making its HRS § 587-73 (a) determination.
(iv) Father contends the family court erroneously granted DHS's Permanent Custody Motion based on the mere fact that the children were out of the family home, but he does not point to evidence for this contention in the record on appeal and we find none.
(g) The family court did not abuse its discretion by holding a hearing on the motion for permanent custody without first holding a trial on the children's placement because there is no law that requires permanent placement of the child before the family court may terminate parental rights and approve a permanent plan. HRS § 587-73(b) (2006 Repl.).
(h) Father contends the family court erred by terminating parental rights "without considering the permanent plan," but, clearly, as evidenced by the court's FOFs 159 through 162, the court considered the April 12, 2007 Permanent Plan in terminating parental rights.
(i) There was clear and convincing evidence in this case that the Permanent Plan assisted in meeting the goal of adoption, which was in the best interests of the children, even though the plan did not address or settle whether the children would be able to remain with their existing foster parents. HRS § 587-73(a) does not require a permanent plan to establish whether a child will be able to remain with his or her existing foster parents after the court awards DHS permanent custody of the child. FOF 160 is not erroneous and COLs 14 and 15 are not wrong.
(j) Father argues that FOFs 7, 36, 47, 50, 51, 52, 133, and 157 are erroneous, but does not actually argue these points in his opening brief and has, therefore, waived them. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.")
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Mother's points of error as follows:
(1) The family court did not err or abuse its discretion in finding and concluding that Mother was not presently willing and able to provide for the children a safe family home and it was not reasonably foreseeable that she would become so, even with the assistance of a service plan, within a reasonable amount of time. Given the undisputed FOFs in the family court's FOF/COL on this issue, even with the assistance of a service plan, the record unquestionably contains substantial evidence supporting the family court's determination. FOFs 52, 116, and 117 are not erroneous and COLs 12 and 13 are not wrong.
(2) DHS gave Mother a "reasonable amount of time" to show that she was willing and able to provide the children with a safe family home, with the assistance of a service plan. HRS § 587-73(a)(2). FOFs 114, 153, and 154 are not erroneous.
Therefore,
The Amended Order Awarding Permanent Custody filed on June 4, 2007 and the "Order Granting Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan Filed May 7, 2002" filed on May 21, 2007 in the Family Court of the First Circuit are affirmed.
NOTES
[1] The Honorable William J. Nagle III presided.
[2] On May 7, 2007, DHS filed its Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan, to which DHS attached a proposed permanent plan, entitled "Family Service Plan," dated March 19, 2007. On May 24, 2007, DHS filed the April 12, 2007 Permanent Plan.